Robert PRINCE, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 59-C-107.

United States District Court E. D. Wisconsin.

July 13, 1960.

---

Nathaniel D. Rothstein and Jack E. Keyes, Milwaukee, Wis., for plaintiff.

Edward G. Minor, U. S. Atty., by Howard C. Equitz, Asst. U. S. Atty., Milwaukee, Wis., for defendant.

GRUBB, District Judge.

The United States of America, defendant in this tort claims action, has alternatively moved for dismissal or for summary judgment.

The motion for dismissal is based on Title 28 U.S.C. § 2401(b), a two year statute of limitations, which reads as follows:

> "A tort claim against the United States shall be forever barred unless action is begun within two years after such claim accrues * * *."

The injury in this case occurred on May 28, 1957, and the complaint was filed May 28, 1959. It is the government's contention that the complaint was filed one day late. This claim is based on the argument that in computing time, the day of the act or event is *included* and the last day is excluded. Plaintiff contends that the rule for computation of time is that the day of the event is *excluded* and the last day is included. Under the rule contended for by the plaintiff, the last date would be May 28, 1959, and under the contention of the defendant it would be May 27, 1959.

The court has found no case on this question decided under Section 2401(b). The majority common law rule favors the

plaintiff, as do many federal cases, considering analogous statutes. In 86 C.J.S. Time § 13(1), page 849, it is stated:

" * * * The general rule is that the time within which an act is to be done is to be computed by excluding the first day and including the last, that is, the day on which the act is to be done; and in many jurisdictions this rule has been adopted by statutes which have been held to be merely declaratory of the existing common-law rule."

To the same effect, see 20 A.L.R.2d 1250.

While very few cases nowadays bother with the exact wording of the statute in question, even if we get very technical, the same rule of excluding the first day would hold true in the case of Section 2401(b). Note that the key words in the statute are "within" and "after."

On page 859 of 86 C.J.S. Time § 13 (7), the following is found:

" * * * Thus, if something is to be done 'within' a specified time 'from' or 'after' a given date or a certain day, the generally recognized rule is that the period of time is computed by excluding the given date or the certain day and including the last day of the period, and, similarly, if something is to be done 'within' a specified time 'from' or 'after' a preceding event, or the day an act was done, the day of the preceding event or on which the act was done must be excluded from the count."

The government in its brief cites the case of Siebert v. Jacob Dudenhoefer Co., 1922, 178 Wis. 191, 188 N.W. 610, to the effect that inclusion of the first day is the common law rule which should apply in the instant case. In the first place, the rule of this case has been changed in Wisconsin by statute so that now Wisconsin excludes the first day. See Hale v. Hale, 275 Wis. 369, 82 N.W. 2d 305. In the second place, the Siebert case expressed the minority view on the subject which was based on an ancient English law distinction between a statute which referred to a "day" or an "event." This minority view never really caught on in the United States, and where it has, it often has been changed by statute.

The federal courts in general have enthusiastically adopted the majority rule where federal statutes are concerned. On page 852 of 86 C.J.S. Time § 13(3), Note 94, that work states that the majority rule prevails in federal practice. To the same effect see the annotation beginning on page 1249 of 20 A.L.R.2d. For cases where it has been applied see:

Wiggins v. United States, 9 Cir., 1933, 64 F.2d 950; United States v. Mathis, D. C.D.N.J.1939, 28 F.Supp. 582—Statute of limitation in tax fraud case.

United States v. Fisher, D.C.W.D.Ky. 1953, 112 F.Supp. 233—Statute of limitation in case involving violation of price stabilization laws.

Fogel v. Commissioner of Internal Revenue, 5 Cir., 1953, 203 F.2d 347—Computation of six month period to determine whether capital gain was long or short term.

Holtz v. Commissioner of Internal Revenue, 9 Cir., 1959, 256 F.2d 865—Computation of time for declaration of forfeiture in federal tax case.

United States v. Hardy, 4 Cir., 1935, 74 F.2d 841—Statute of limitation in civil tax case.

The Leopard, D.C.1932, 1 F.Supp. 219—Statute of limitation in admiralty case.

In re Schmidt, D.C.D.Neb.1944, 54 F. Supp. 262—Computation of stay in bankruptcy proceeding.

Stringer v. United States, 1950, 90 F. Supp. 375, 117 Ct.Cl. 30—Notice requirement under Veterans' Preference Act.

In re Donaldson, 1943, 138 F.2d 419, 35 C.C.P.A. Patents 701—Effective date of statute.

Dunn v. Wheeler Shipbuilding Corp., D.C.E.D.N.Y.1949, 86 F.Supp. 659—Statute of limitation under Death on the High Seas Act.

Davis v. Commissioner of Internal Revenue, 7 Cir., 1957, 241 F.2d 701—Computation of date of loss in tax case.

In addition to these lower court cases, the Supreme Court in Burnet v. Willingham Loan & Trust Co., 1931, 282 U.S. 437, 51 S.Ct. 185, 75 L.Ed. 448, ruled that in computing a statute of limitation in a civil tax case, the first day is excluded and the last day is included. The Seventh Circuit in the Davis case, supra, followed this Supreme Court decision.

In contrast to the above cases, the government cites two bankruptcy cases in support of its minority rule contention—In re Little, 7 Cir., 1905, 137 F. 521, and In re Smith, D.C.E.D.N.Y.1907, 155 F. 688. Neither of these two cases, however, were directly concerned with the inclusion-exclusion problem and simply in a casual aside, which was not necessary to the decision, mentioned that the statute expired on such and such a date.

In addition to the above, Rule 6(a) of the Federal Rules of Civil Procedure, 28 U.S.C., states that the majority rule applies when computing time under the Federal Rules. The government claims this rule does not apply to a statute of limitation question. The plaintiff claims it does. Neither cites any authority or cogent reasoning for their stand. The fact of the matter is that there is a split in the Circuits as to whether Rule 6(a) does or does not apply.

In Joint Council Dining Car Employees Local 370, et al. v. Delaware, L. & W. R. Co., 2 Cir., 1946, 157 F.2d 417, the court stated that Rule 6(a) is the rule of procedure relating to acts done or proceedings had after commencement of an action and was not intended to modify or change existing statutes of limitation which operate prior to the commencement of the action. Moore's Federal Practice takes this stand also. See Moore's Federal Practice, Vol. 2, page 1431.

On the other hand the weight of authority seems to favor applying Rule 6 (a) to statute of limitation questions. See Wilkes v. United States, 5 Cir., 1951, 192 F.2d 128; Peters v. United States, D.C.W.D.Okl.1954, 16 F.R.D. 581; and Rutledge v. Sinclair Refining Co., D.C.S. D.N.Y.1953, 13 F.R.D. 477. This is a very natural tendency for Rule 6(a) is merely an expression of the general common law rule on the subject.

█ The motion to dismiss is hereby denied.

A resume of the facts is necessary in order to understand the defendant's motion for summary judgment.

The plaintiff in this case had on the night of May 28, 1957, attended a baseball game at Milwaukee County Stadium. After the game he left the stadium and started walking in a southerly direction looking for the bus line or streetcar on National Avenue. In the course of this stroll, he happened upon the premises of the Veterans Administration Hospital at Wood, Wisconsin. As he walked along a path which bordered a cliff on the Veterans Administration grounds, he claims that he stumbled over a large stone in the middle of the path, was thrown off balance, and fell down a rocky slope against a fence which gave way. When the fence gave way, he claims he was "hurtled" over a cliff and was seriously injured. The allegations of negligence are: (1) Permitting a large rock to be located in the middle of a footpath; (2) constructing a footpath near a cliff; (3) failing to maintain the fence which gave way when the plaintiff fell against it; and (4) failing to light the path.

In the complaint the plaintiff claims he was on the premises as an "invitee" of the defendant. Other material allegations include a statement made, in conjunction with the allegation of negligent failure to light the path, to the effect that the defendant knew or should have known that the path was being used for *pedestrian* traffic. In addition, there is a statement at the beginning of the complaint to the effect that the defendant maintains *public pathways* on the Veterans Administration premises.

In a deposition the defendant testified that he happened upon the Veterans Administration grounds after leaving a baseball game and while looking for a bus line or streetcar. He also testified

that he had no official business with the Veterans Administration at the time of the alleged accident nor had anyone invited him to come upon the property of the defendant.

■ In support of its motion, the defendant argues that the admissions of the plaintiff as contained in the deposition conclusively prove that plaintiff could not have been an invitee and must have been either a licensee or a trespasser. If the plaintiff was an invitee, the defendant's standard of care is ordinary care. If the plaintiff was a licensee, the rule of ordinary care does not apply, and the defendant can only be held liable if it was guilty of active negligence or if there was something on the premises in the nature of a trap. Greenfield v. Miller, 1921, 173 Wis. 184, 180 N.W. 834, 12 A.L.R. 982. If he was a trespasser, the defendant is liable only for conduct which is wanton or willful. Nalepinski v. Durner, 1951, 259 Wis. 583, 49 N.W. 2d 601.

■ In regard to the status of the plaintiff, it is obvious from the record that he was not an invitee for he admits that he was not invited but merely wandered onto the property. To be an invitee, an express or implied invitation is necessary, and neither is present in the instant case. Wendt v. Manegold Stone Co., 1942, 240 Wis. 638, 4 N.W.2d 134.

■■ The defendant strongly urges that since the plaintiff could not have been an invitee that he must have been a trespasser. The record before the court suggests this conclusion for he did go upon private property without invitation. If he was a trespasser, he obviously could not recover for only negligent conduct is alleged. Wanton or willful conduct would be necessary. Nalepinski v. Durner, supra. On a motion for summary judgment, the nonmoving party must be given the benefit of any doubt. There are several circumstances in the record from which it might be inferred that plaintiff was a gratuitous licensee.

In Brady v. Chicago & North Western Railway Co., 1954, 265 Wis. 618, 62 N.W.

2d 415, the court stated that where a private property owner tolerated and acquiesced in the constant use of his property by the public, such users are considered gratuitous licensees rather than trespassers. In the instant case there is nothing in the record to show whether or not the public used the Veterans Administration paths, and if so, there is nothing to show whether or not any such use was known to or tolerated by the defendant. However, the complaint does allege that the defendant maintained "public" pathways on its grounds, and also that, to the knowledge of the defendant, pedestrians used the particular path in question.

■ The premises are the site of a Veterans Administration Hospital. It might be inferred from this fact that the premises were used by the public more than they would be used if it were ordinary private property. While the plaintiff has not put anything in the record to show that the public was in the habit of using the paths of Wood, Wisconsin, the defendant likewise has not put in any evidence to the effect that the public was not permitted and did not use the pathways. There may be an issue of fact as to this question.

The defendant insists that even though the plaintiff was not a trespasser but rather a licensee, still, as a matter of law, he cannot recover.

The defendant argues that a licensee can only recover if the licensor sets a trap or is guilty of active negligence. It then contends that none of the allegations of negligence could possibly be construed as active negligence or a trap. Plaintiff agrees that a licensee must take the premises in the condition he finds them and can only recover upon the grounds of active negligence or the existence of something in the nature of a trap. Cordula v. Dietrich, 1960, 9 Wis. 2d 211, 101 N.W.2d 126; Greenfield v. Miller, 1921, 173 Wis. 184, 180 N.W. 834, 12 A.L.R. 982.

■ The plaintiff in his brief has conceded that none of his allegations of negligence constitute active negligence. He

insists there is an issue of fact as to whether the various defects alleged could constitute a trap. This, then, is the sole remaining question.

The Wisconsin cases do not define the word "trap" with any great specificity, but there are some indications as to its meaning. For example, in O'Shea v. Lavoy, 1921, 175 Wis. 456, at pages 462–463, 185 N.W. 525, at page 528, 20 A.L.R. 1008, it is stated:

> " * * * According to those rules the guest accepts the premises of his host as he finds them, subject only to the limitation that the licensor must not set a trap or be guilty of active negligence which contributed to the injury. * * * A trap, within the meaning of this rule as we understand it, is a hidden danger lurking upon the premises which may be avoided if known. * * * "

In Cleary v. Eckart, 1926, 191 Wis. 114, at page 116, 210 N.W. 267, at page 268, 51 A.L.R. 576, the court said:

> "It is well settled that the guest must accept the premises of the host as he finds them; it being only the duty of the host to warn the guest of lurking dangers. * * * "

To the same effect, see Hensel v. Hensel Yellow Cab Co., 1932, 209 Wis. 489, 245 N.W. 159.

Examples of what the court has held not to be a trap in licensee cases follow:

Greenfield v. Miller, 1921, 173 Wis. 184, 180 N.W. 834, 12 A.L.R. 982—A small loose rug on a highly polished floor.

Lewko v. Chas. A. Krause Milling Co., 1922, 179 Wis. 83, 190 N.W. 924—An open pit three feet in diameter and six feet deep into which steam and hot water were fed. The court stated at page 86 of 179 Wis., at page 925 of 190 N.W.:

> "Useful and not grossly negligent conditions and appliances on private property do not render the owner thereof liable to mere licensees or trespassers. To do so they must be of such a character as to constitute active negligence. The pit in question was open, obvious, and useful,

and, though dangerous to children, and perhaps to adults also, it cannot be classed as a hidden trap or a concealed death-dealing instrumentality."

(Note: This case was later overruled on the ground of attractive nuisance, Angelier v. Red Star Yeast & Products Co., 215 Wis. 47, 254 N.W. 351, but still retains its vitality as to what constitutes a trap.)

Brady v. Chicago & North Western Railway Co., 1954, 265 Wis. 618, 62 N.W. 2d 415—A catwalk on a railroad bridge which did not go the entire length of the bridge and was open at the end. A young boy fell while climbing from the open end catwalk to the bridge proper. The court stated at page 625 of 265 Wis., at page 418 of 62 N.W.2d:

> "We consider this statement appropriate to the cases now before us. No special duty was owed by the defendant to these children over and above that due older gratuitous licensees. The danger arose solely from the manner in which defendant constructed and maintained its premises and it was open and apparent. This passive negligence, such as it was, would not sustain a cause of action in favor of an adult licensee and it will not sustain one in favor of a child having the knowledge and realization found by the jury."

Cordula v. Dietrich, 1960, 9 Wis.2d 211, 101 N.W.2d 126—A garden hose left by defendant over a sidewalk. The court stated at page 213 of 9 Wis.2d at page 128 of 101 N.W.2d:

> "We see no more active negligence on the part of the respondent in placing the garden hose across his sidewalk than there was in the placing of a small rug on a slippery floor. Nor can it be said that the hose constituted a trap. The day in question was a Saturday afternoon in July and respondent was obviously engaged in doing ordinary chores about the yard. One might very well expect to encounter a hose across a sidewalk under such circumstances.

In any event, even if it be considered a danger, respondent would have no duty to give warning of a condition which should be obvious to the licensee. See Prosser, Law of Torts (2d ed.), p. 445, sec. 77."

Warner v. Leiberman, D.C.E.D.Wis. 1957, 154 F.Supp. 362, affirmed 7 Cir., 253 F.2d 99—Defective leg on chaise longue.

The following are examples of what the courts have held to be "traps" in licensee cases:

Brinilson v. Chicago & Northwestern Railway Co., 1911, 144 Wis. 614, 129 N.W. 664, 32 L.R.A.,N.S., 359—A pit three feet in diameter and six or seven feet deep. Steam was fed into the pit, and the top was covered by planking which had a small hole in it. The plaintiff, a *young child*, fell through this hole and the planking into the pit. The court stated at pages 618–619 of 144 Wis., at page 666 of 129 N.W.:

" * * * That the opening or hole in the cover of the steam pit as described in the evidence was dangerous seems self-evident from its very nature and condition. It is also clear that the hole in the planking that covered the excavation was not readily observed, and was obscured by the steam rising therefrom through this hole and the cracks between the planks covering the pit. This condition of the place made the pit a dangerous trap or pitfall to persons on the premises, and the omission to observe and repair the planking constitutes active negligence on the part of the railroad toward them."

(Note: This case was decided before the doctrine of attractive nuisance was developed in Wisconsin.)

Lehman v. Amsterdam Coffee Co., 1911, 146 Wis. 213, 131 N.W. 362—An open stairway in a darkened area in the rear of a store which was hidden from view by piles of merchandise. The court stated at page 218 of 146 Wis., at page 364 of 131 N.W.:

"The rule is familiar that, where one invites another upon his premises, he cannot without warning leave a snare or trap there into which the invited person falls while exercising ordinary care, and escape liability therefor. Barowski v. Schulz, 112 Wis. 415, 88 N.W. 236. We should be slow to say that an ordinary open stairway or hatchway in the storage part of a store could be called a trap or snare, even to an invitee. It is common knowledge that such places are very usual, and doubtless every person of full age should anticipate their existence; but the circumstances here are very much out of the ordinary. The stairway was surrounded on two sides with piles of merchandise as high or higher than the rail, and on one side by shelving. The evidence seems to be ample to show that in approaching it from the front of the store there would be no sign or indication of a stairway, and that only as one came practically to the opening itself from the east was it possible to see it, or anything suggesting the existence of an opening in the floor. The jury might, we think, well say from the evidence that it was a trap or snare of whose existence under the circumstances the rules of ordinary care would require that an invited person be warned."

(Note: This is an invitee case, not a licensee case.)

Meyer v. Menominee & Marinette Light and Traction Co., 1912, 151 Wis. 279, 138 N.W. 1008—A lumber pile which rose to within twenty-one inches of high tension wires. This is again a case of a child being injured prior to development of the doctrine of attractive nuisance in Wisconsin. In addition, there is no specific holding that the condition was a trap, although later cases refer to it as such.

Zetley v. Jame Realty Co., 1924, 185 Wis. 205, 201 N.W. 252—A single board barrier, one inch by seven inches by five feet which protected a deep excavation

276

about three feet from a private sidewalk. The board was fastened at one end by one small rusted nail, and the wood was rotted in the vicinity of the nail. The plaintiff leaned on the board with two hands, and it gave way, and she fell into the excavation. The court stated at page 210 of 185 Wis., at page 254 of 201 N.W.:

" * * * Even as to licensees, the owner may not make a trap or snare on his premises and so induce the public to use the same, without any responsibility on his part. Brinilson v. Chicago & N. W. R. Co., 144 Wis. 614, 129 N.W. 664. The barrier having become insecure, it constituted a dangerous snare for one traveling on the walk, and who might be led to use the same as did the plaintiff in this case."

Woodruff v. Ellenbecker, 1927, 194 Wis. 167, 215 N.W. 816—A rubbish box had a cover on it which originally was capable of staying open by itself when lifted because it leaned against a shed. The plaintiff, a tenant of the defendant, was away. The defendant repaired the cover and in so doing so moved the hinges that the cover would no longer stay open of its own accord. The plaintiff returned, and not being informed of the change, lifted the cover in her usual manner. It fell back, injuring her. The court stated at pages 169–171 of 194 Wis., at page 817 of 215 N.W.:

"The court obviously overlooked the fact that, while this was a very simple contrivance, by reason of the manner in which it was first made and used by the plaintiff over a long period of time the cover would stay up when raised, and that after the repairs were made the cover was so changed that it would fall down, unless held up. The plaintiff had received no warning of the change, and we do not think it was readily obvious to the plaintiff that the change had been made. It was quite natural for her to assume that the cover would stay up as it had in years gone by, and from force of habit to again use it as she had for many years.

The most simple contrivance may constitute a dangerous trap or snare to a person using it. * * *

* * * *

"The principle is applicable to this case. The plaintiff had been using this box for a long period of time, when it was so constructed that the cover would stay up without being fastened, and then the landlord, without her knowledge and without any warning to her, changed the condition of the cover so that it would not stay up. The plaintiff had been lured into a danger that was not necessarily obvious to her.

"The respondent relies upon Holt v. Chicago, M. & St. P. R. Co., 94 Wis. 596, 69 N.W. 352, known as the 'Pinch-bar case,' and Borden v. Daisy R. M. Co., 98 Wis. 407, 74 N.W. 91, known as the 'Step-ladder case.' In neither of these cases was the plaintiff lured into the use of a dangerous contrivance, and in both such cases the plaintiffs were using the instrumentalities for the first time, and the court held that they should have made a simple inspection that would have disclosed the defect. * * *"

Masek v. Bubenheimer, 1938, 229 Wis. 194, 281 N.W. 924—Defendant landlord drove a sharp pipe or stake into the ground near a driveway to prevent cars from ruining the lawn. He did not inform the plaintiff tenant. Plaintiff stumbled over the pipe in darkness and was injured. The court stated that plaintiff was a licensee, and this constituted active negligence because the pipe could not be seen at night, and the plaintiff was not warned. There was no finding of a trap.

The above indicates that to constitute a "trap," there must be a condition hidden rather than open or observable, and the condition must be extremely dangerous or lethal. The latter element is qualified by cases holding that a simple contrivance normally nondangerous or nonlethal can nevertheless be a trap where a licensee has been led to expect a certain condition because of constant use

and is injured because the condition has been changed without his knowledge. Whether a condition is useful or nonuseful also has some bearing on the issue of whether there is a trap.

The facts now in the record on this motion are lacking in factual and descriptive matter concerning the scene of the accident. The court has no knowledge of the size of the rock, how it got into the path, how long it had been there, the extent to which the public used the path, and what knowledge the Veterans Administration had of any such public use. The record is not clear as to the exact alleged defective nature of the fence, the exact position of the path with reference to the cliff, what, if any, lighting there was on the path on the night in question, and what lighting there was ordinarily on the path. On the present state of the record, plaintiff could offer evidence on many of these subjects.

The motion for summary judgment must, therefore, be and it is hereby denied.